IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HENRY EDWARD McCULLUM,  )
          Plaintiff,  )
          v.  ) Civil Action No. 16-129-E
CAROLYN W. COLVIN,  )
*Acting Commissioner of Social Security*,  )
          Defendant.  )

O R D E R

AND NOW, this 19th day of September, 2017, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 11) filed in the above-captioned matter on October 17, 2016,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 9) filed in the above-captioned matter on September 9, 2016,

IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Motion is granted to the extent that it seeks a remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below, and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

**I.**     **Background**

Plaintiff, Henry Edward McCullum, filed a claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, on February 24, 2014, and protectively filed a claim for Supplemental Security Income under Title XVI of the Act, 42

1

U.S.C. §§ 1381-1383f, effective January 21, 2014, claiming that he became disabled on April 1, 2013, due to bipolar disorder, lower back problems, hearing loss in the left ear, high cholesterol, and borderline diabetes.[1]  (R. 20, 101, 113, 198-210, 228).  After being denied initially on July 10, 2014, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on August 31, 2015.  (R. 20, 38-79, 101-26).  In a decision dated November 10, 2015, the ALJ denied Plaintiff's request for benefits.  (R. 20-31).  The Appeals Council declined to review the ALJ's decision on April 4, 2016.  (R. 1-5).  Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II. Standard of Review

Judicial review of a social security case is based upon the pleadings and the transcript of the record.  See 42 U.S.C. § 405(g).  The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact.  See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the ALJ's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion.  Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)).  However, a "'single piece of evidence will not satisfy the substantiality test if the

---

[1] As will be further discussed below, Plaintiff later also alleged to be disabled due to left shoulder pain.  (R. 103, 115).

2

[Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "'Nor is evidence substantial if it is overwhelmed by other evidence— particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.'" Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. §§ 404.1520, 416.920. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522, 416.922. If the claimant fails to show that his or her

3

impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work, see 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv), and the claimant bears the burden of demonstrating an inability to return to this past relevant work, see Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation then moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience. See id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. §§ 404.1523, 416.923.

### III. The ALJ's Decision

In his November 10, 2015 decision, the ALJ found that Plaintiff met the insured requirements of the Social Security Act through September 30, 2015. (R. 22). Accordingly, to

be eligible for DIB benefits, Plaintiff had to establish that he was disabled on or before that date. See 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101, .110, .131.

The ALJ then proceeded to apply the sequential evaluation process when reviewing Plaintiff's claim for benefits. In particular, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset date of April 1, 2013. (R. 22). The ALJ also found that Plaintiff met the second requirement of the sequential evaluation process insofar as he has the following severe impairments: "left shoulder, partial supraspinatus tear with bursitis, acromioclavicular joint osteoarthritis, myofascial pain disorder, mood disorder, anxiety disorder, and alcohol abuse in remission." (R. 22-23). The ALJ found that several of Plaintiff's alleged limitations did not qualify as severe impairments, including his obesity, left ear sensorineural hearing loss, borderline diabetes mellitus, and lumbar L5 spina bifida occulta. (R. 23). The ALJ concluded that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three. (R. 23-25).

The ALJ went on to find that Plaintiff retained the RFC to perform medium work with the following additional limitations:

> he can only frequently climb a ladder, rope or scaffold; he can only frequently push, pull, or operate foot controls with the lower extremities; he can only frequently climb ramps or stairs; he can only frequently balance, stoop, kneel, crouch, or crawl; he can only frequently reach in all directions to include overhead with his left non-dominant upper extremity, but with no left non-dominant manipulative limitation, and with no right dominant upper extremity reaching or manipulation limitation; he must avoid all exposure to unprotected heights, dangerous machinery, and like workplace hazards; he is limited to understanding, remembering, and carrying out simple instructions and performing simple, routine tasks, such as those akin to requirements of work at the SVP 1 or SVP 2 levels; he is limited to no work-related contact with the public and only occasional and superficial interaction with co-workers; and is limited to a low stress work environment, which means no production rate pace work, but, rather, goal oriented

work with only occasional and routine change in work setting, defining routine change as that which does not require alteration in work method.

(R. 25-29). Based on this RFC, Plaintiff established that he is incapable of returning to his past employment; therefore, the ALJ moved on to Step Five. (R. 29-30).

At Step Five, the ALJ then used a vocational expert ("VE") to determine whether or not a significant number of jobs existed in the national economy that Plaintiff could perform. The VE testified that, given Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, such as agricultural packer, auto detailer, and order picker. (R. 30-31). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 31).

## IV. Legal Analysis

Plaintiff argues that the ALJ insufficiently accounted for the opinion of his treating psychologist, Angela Lindemuth, D.O., and that of the state reviewing agent, Shelley Ross, Ph.D., in formulating his RFC. In particular, he points out that, although the ALJ made some accommodation for Plaintiff's limited ability to interact with the public and co-workers, he made no such accommodation in regard to Plaintiff's limitations in interacting with supervisors, despite evidence in both Dr. Lindemuth's opinion and Dr. Ross' opinion suggesting such limitations. The Court agrees that the ALJ's failure to discuss this issue renders his determination and discussion of Plaintiff's RFC inadequate and necessitates remand for further consideration and discussion.

RFC is defined as the most that an individual is still able to do despite the limitations caused by his or her impairments. See Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001). See also 20 C.F.R. §§ 404.1545(a), 416.945(a). Not only must an ALJ consider all relevant

evidence in determining an individual's RFC, the RFC finding "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 247 F.3d at 41 (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). "'[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.'" Id. (quoting Cotter, 642 F.2d at 705). See also SSR 96-8p, 1996 WL 374184 (S.S.A.), at *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

Here, the ALJ clearly considered and discussed the opinions of Drs. Lindemuth and Ross in formulating the RFC, but failed to discuss one common issue raised in both opinions. In her response to a mental health impairment questionnaire completed by Dr. Lindemuth on September 10, 2014, she opined that Plaintiff numerous restrictions involving social interactions, including that he had a marked limitation in accepting instructions and responding appropriately to criticism from supervisors. (R. 396). Likewise, in reviewing the record, Dr. Ross found several social interaction limitations, and indicated that Plaintiff was moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors. (R. 108, 121). She further stated that Plaintiff "would require some accommodation in accepting instruction and help responding adaptively to criticism from supervisors." (R. 109, 121). Although the ALJ accounted for the other social limitations to which these professionals opined, he did not account for any limitations involving interaction with supervisors nor explain why he elected not to do so.

The ALJ was not required to simply adopt all of the findings in Dr. Lindemuth's and Dr. Ross' opinions. Indeed, the opinions were not even fully consistent. He could have adopted some and rejected others in favor of contrary evidence in the record, as it was ultimately up to him to decide Plaintiff's RFC. Cf. SSR 96–5p, 1996 WL 374183 (S.S.A.), at *4 (July 2, 1996) ("Adjudicators must remember, however, that medical source statements may actually comprise separate medical opinions regarding diverse physical and mental functions, such as walking, lifting, seeing, and remembering instructions, and that it may be necessary to decide whether to adopt or not adopt each one."). Before doing so, however, the ALJ was required to provide some explanation for why he was not adopting the restrictions regarding Plaintiff's limited ability to interact with supervisors to which both professionals opined. Absent that, the Court cannot say whether the ALJ failed to incorporate any restrictions accounting for such limitations into his RFC for "no reason or the wrong reason." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999).

This lack of clarity must be addressed on remand. On remand, the ALJ should address the findings regarding Plaintiff's limited ability to interact with supervisors and either (1) incorporate them into his RFC assessment and the hypothetical he poses to the VE; or (2) explain why he is not adopting them. See Shaw v. Colvin, No. 14-1501, 2015 WL 4162446, at *3 (W.D. Pa. July 9, 2015) (remanding case in which "it [was] uncertain why the ALJ chose to incorporate certain limitations" in a medical source statement "and not others"). The Court expresses no opinion as to whether the ALJ's RFC assessment could be supported by the record or whether additional restrictions are needed. Instead, it is the need for additional explanation by the ALJ that necessitates a remand in this case. As such, the record does not permit the Court to reverse and remand the case for an award of benefits. See Podedworny v. Harris, 745 F.2d 210, 221-22

(3d Cir. 1984).[2]

## V. Conclusion

In short, the record does not permit the Court to determine whether the findings of the ALJ regarding Plaintiff's RFC are supported by substantial evidence, and, accordingly, the Court finds that substantial evidence does not support the ALJ's decision in this case. The Court hereby remands the case to the Commissioner for reconsideration consistent with this Order.

s/Alan N. Bloch<br>
United States District Judge

ecf:		Counsel of record

---

[2] Plaintiff also argues that the ALJ had no basis for finding him to be capable of frequently reaching overhead with his left non-dominant upper extremity. While the Court does not reach this issue, on remand the ALJ should address the issues raised by Plaintiff in regard to his findings about Plaintiff's ability to use his left upper extremity. In so doing, the ALJ may consider obtaining additional information from Ted Woods, M.D., the consultative examiner, regarding the nature of Plaintiff's poor physical effort during the examination and how this poor effort affects his opinion.